# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DIANE RUSSELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND RECOMMENDATION** |
| ) | |
| ABSOLUTE COLLECTION SERVICE, ) | 1:09CV515 |
| INC., and CHARLTON CLARKSON, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on a motion for partial summary judgment by Plaintiff Diane Russell (docket no. 17). Defendants Absolute Collection Service, Inc. and Charlton Clarkson have responded in opposition to the motion and, in this posture, the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge. Thus, the motion must be dealt with by way of recommendation. For the reasons set forth below, it will be recommended that the court deny Plaintiff's motion for partial summary judgment.

## I. Background and Facts

Plaintiff filed this action on July 16, 2009, alleging abusive debt collection actions under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., as well as under various North Carolina state laws, against Defendant debt collector Absolute Collection Service, Inc., and one of its employees Charlton Clarkson [hereinafter referred to collectively as "Defendant"]. On March 1,

2010, Plaintiff filed a motion for partial judgment on her FDCPA claim. The following facts are undisputed on the motion for summary judgment:

On June 25, 2008, Jerry Russell received medical care from Sandhills Emergency Physicians ("SEP") at FirstHealth Moore Regional Hospital in Pinehurst, North Carolina, and incurred a bill for $501.00, for which Plaintiff was responsible. On December 2, 2008, SEP referred the bill to Defendant for collection. In an attempt to collect on the bill, Defendant mailed letters to Plaintiff on December 8, 2008, and on December 28, 2008, and placed calls to Plaintiff's phone number on December 8, December 11, December 17, December 22, and December 27, 2008. A representative of Defendant actually spoke to Plaintiff on only one of these days, December 8. Defendant's notes indicate that in the December 8 phone call, Plaintiff told Defendant that she would contact the hospital for more information and call Defendant back.

Plaintiff subsequently sent a check directly to SEP for the full amount owed. The check cleared on January 5, 2009, and was credited to SEP's account on January 8, 2009. On January 10, 2009, Defendant placed a call to Plaintiff's phone number. The call was answered by an answering machine. On February 2, 2009, Defendant sent its third letter to Plaintiff seeking payment. On February 6, 2009, Defendant had its second conversation with Plaintiff, in which Plaintiff told Defendant that she had paid the account balance directly to SEP and that her check had cleared. While Defendant's notes from the conversation do not indicate whether

2

Defendant's representative at that time requested proof of payment, Defendant typically requests proof of payment when a consumer asserts over the phone that she has paid off the balance of the debt. On February 23, 2009, Defendant sent its fourth letter to Plaintiff. Plaintiff called Defendant on February 27, 2009, and again stated that she had paid the bill in full. Defendant's representative requested that Plaintiff provide proof of payment, but Plaintiff refused and stated that she was going to get a lawyer.

Defendant mailed a final collection letter on March 23, 2009. On April 6, 2009, Plaintiff contacted the Better Business Bureau to complain about Defendant's conduct. On April 8, 2009, the Better Business Bureau informed Defendant of the dispute. On April 9, 2009, Defendant reported back to the Better Business Bureau that it had contacted SEP and that the account had been paid in full. Plaintiff alleges in her complaint that Defendant should have contacted SEP when Plaintiff first disputed the account in January 2009, as the reinvestigation would have confirmed that Plaintiff had paid the amount owed in full to SEP. (Compl. ¶¶ 66-67.) Plaintiff alleges that although she repeatedly told Defendant over the phone that her bill had been paid, Defendant continued collection efforts, which made Plaintiff feel "frustrated and harassed." (*Id.* ¶ 72.)

Plaintiff contends that the above-alleged conduct by Defendant constitutes violations of various sections of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., including, but not limited to the following provisions: 15

U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), and 1692f(5). Plaintiff also alleges in the complaint that Defendant violated the North Carolina Debt Collection Act, N.C. GEN. STAT. § 75-50 et seq., as well as N.C. GEN. STAT. § 58-70-90 et seq. (titled "Prohibited Practices by Collection Agencies Engaged in the Collection of Debts from Consumers"). Plaintiff now seeks partial summary judgment as to her FDCPA claim with respect to liability, leaving the issue of damages to the jury.

## II. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by

demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

## III. Analysis

Here, in support of the motion for partial summary judgment, Plaintiff states that Defendant committed violations of various sections of the FDCPA as a matter of law because even after Plaintiff told Defendant over the phone that her debt was paid, Defendant still continued collection efforts, and Defendant only ceased collection efforts after the Better Business Bureau became involved.[1] More specifically, Plaintiff states in her brief that "despite having paid the amount in full, [Plaintiff] was the victim of increased collection efforts by [Defendant] during the

---

[1] Plaintiff alleges that Defendant violated the following, specific provisions of the FDCPA: 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), and 1692f(5). Section 1692d states that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Section 1692e generally prohibits a debt collector from making "any false, deceptive, or misleading representation . . . in connection with the collection of any debt." Sections 1692e(2)(A), 1692e(8), 1692e(10), and 1692e(11), in turn, give examples of conduct that violates Section 1692e. Section 1692f prohibits and defines various "unfair or unconscionable means to collect or attempt to collect any debt." Section 1692f(1) prohibits the collection of any amount of a debt "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Section 1692f(5) prohibits a debt collector from "[c]ausing charges to be made to any person for communications by concealment of the true purpose of the communication."

months of January, February, and March 2009." (Pl.'s Br. at 4.) Plaintiff contends that "[t]here is no dispute that [Plaintiff] paid the account in full directly to SEP. No procedure exists between SEP and Defendants to provide notification of the payment from a consumer. Defendant's collection efforts against [Plaintiff] on an account that had been paid in full violated the FDCPA. Thus, a grant of partial summary judgment is appropriate for any violations of the [FDCPA] arising from Defendant's collection efforts." (Pl.'s Br. at 8.)

In response, Defendant contends that it did not commit any violations of the FDCPA.[2] Defendant contends that it sought reasonable cooperation from Plaintiff by asking Plaintiff for proof of payment when she told Defendant's representatives over the phone that she had paid the bill. Defendant notes that Plaintiff flatly refused to provide proof of payment. Defendant notes that this is not a case where Plaintiff is alleging that Defendant engaged in harassing, abusive, or contentious communications in order to collect a debt from Plaintiff. Defendant notes, rather, that Plaintiff's FDCPA claim rests solely on the fact that, after Plaintiff told Defendant over the phone that she had paid her bill, Defendant asked Plaintiff to provide proof of payment and continued collection efforts when Plaintiff refused to do so.

I agree with Defendant that Plaintiff is not entitled to partial summary judgment. The FDCPA is not intended to stifle all debt collection practices. Indeed,

---

[2] Defendant does not dispute that it is a debt collector within the meaning of the FDCPA.

debt collection is a legitimate business. The FDCPA is aimed, rather, at eliminating any debt collection practices that are *abusive*. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The statute provides procedures and rules for the protection of both consumers and debt collectors. These procedures provide in part that once a consumer disputes a debt *in writing*, the debt collector must cease all debt collection attempts and verify the debt. More specifically, Section 1692g(b) provides:

> *If the consumer notifies the debt collector in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.* Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g (emphases added). Under the plain language of Section 1692g, unless and until a consumer disputes a debt *in writing*, the debt collector may continue to attempt to collect on the debt, albeit in a manner that is not abusive as

defined under the FDCPA. Thus, while consumers have rights under the FDCPA, they also have responsibilities, and the burden on a consumer to dispute the debt in writing is not an onerous one. Indeed, the requirement that the dispute must be in writing actually protects the consumer by creating a paper trail.

Plaintiff appears to contend in her brief, however, that the FDCPA does not require the dispute to be in writing in order to trigger the collector's obligations to cease collection efforts and verify the debt.[3] I disagree, as the plain language of Section 1692g(b) clearly indicates that there is such a requirement. Here, if Plaintiff had communicated *in writing* to Defendant that she was disputing the debt, the written notice would have triggered the duty under Section 1692g(b) for Defendant to immediately cease collection efforts and verify that the debt was owed. Defendant would have been in violation of the FDCPA if it had, at that point, continued collection efforts and if it had continued to demand proof of payment from Plaintiff. Here, however, because Plaintiff failed to dispute the debt in writing, Defendant had every right to continue collection efforts, and its failure to contact SEP to inquire as to whether Plaintiff had paid the debt to SEP does not make Defendant liable under the FDCPA. *Accord Ehrich v. I.C. Sys., Inc.*, 681 F. Supp. 2d 265, 273 (E.D.N.Y. 2010) ("[I]n order for the consumer to gain his or her rights to verification, the request for debt verification must be made in writing rather than over the phone. 15 U.S.C.

---

[3] I note that Plaintiff has not argued on summary judgment that Defendant violated the FDCPA by failing to notify Plaintiff that she was required to dispute the debt in writing in order to trigger the "cease collection" and "verification" duties of Section 1692g(b).

§ 1692g(b). A phone call, therefore, does not suffice to meet the requirement of written notice . . . ."); *Withers v. Eveland*, 988 F. Supp. 942, 947 (E.D. Va. 1997) (stating that "if a consumer contests a debt by telephone rather than in writing, the consumer will inadvertently lose the protections for debtors set forth in the FDCPA; the debt collection agency would be under no obligation to verify the debt and cease all collection efforts as required by § 1692g(b)"). Thus, to the extent that Plaintiff contends that she is entitled to partial summary judgment based on the fact that Defendant continued collection efforts even after she informed them over the telephone that she had already paid her bill directly to SEP, her motion for partial summary judgment should be denied.

## V. Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that Plaintiff's motion for partial summary judgment (docket no. 17) be **DENIED**.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
October 27, 2010