THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
ROCKINGHAM DIVISION
No. 1: 09-cv-515-WWO-WD

| | | |
|---|---|---|
| DIANE RUSSELL | ) | |
| Plaintiff, | ) | PLAINTIFF'S BRIEF IN |
| | ) | SUPPORT OF HER MOTION |
| vs. | ) | IN LIMINE, OR IN THE |
| | ) | ALTERNATIVE, MOTION TO |
| ABSOLUTE COLLECTION SERVICE; | ) | AMEND THE SCHEDULING |
| and CHARLTON CLARKSON; | ) | ORDER AND RE-OPEN |
| Defendants. | ) | DISCOVERY |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE**

Plaintiff filed this action on July 16, 2010 (DE 1), alleging various violations of the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.* and North Carolina's analogous statute, N.C. Gen. Stat. §§ 58-70 *et seq.*, Prohibited Acts by Collection Agencies.[1] Over 16 months later, and literally on the eve of trial, Defendants have birthed a new defense: a never before revealed "mistake" or error that they contend absolves them of liability under the Act. Up until now, their defense was to "blame the consumer." Without abandoning that defense, Defendants have launched a brand new defense: "blame Sandhills Emergency Physicians" (SEP), their client. Plaintiff requests that this Court issue an order preventing Defendants from asserting a bona fide error defense based on any alleged procedural breakdown between itself and SEP that resulted in Defendants' violations of federal and state law.

Before a defendant is entitled to the bona fide error defense, it must first admit that a

---

[1] Throughout the extensive filings pertaining to Defendants' alleged bona fide error defense, it has not been expressly noted that no such defense is available under North Carolina law for a debt collector who violates the law to avoid liability. Plaintiff takes this opportunity to note that now.

1

violation of the Act occurred, that it had reasonable procedures in place to avoid such an error, and the act itself was unintentional. § 1692k(c); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605 (2010); *Allen v. Checkredi of Kentucky, LLC*, No. 09-103-DLB (E.D. Ky. Nov. 17, 2010). Throughout this litigation, Defendants have argued that they made no error and that they have not violated any law. As a fall-back position, and in an effort to have it both ways, Defendants have also consistently asserted a bona fide error defense based on lack of written proof of payment from the consumer. Most recently, Defendants demonstrably clung to their "proof of payment" defense by including it as the sole basis for bona fide error in their Trial Brief, which was filed only hours before the November 15, 2010 status conference. (DE 59 at 6.) Then, without any forewarning, during oral argument, Defendants put forth a completely undeveloped, previously unasserted defense that SEP, a non-party to this action, perpetrated some undisclosed mistake that, Defendants contend, somehow constitutes their bona fide error defense

Defendants conceived their new defense at the final pre-trial status conference held on November 15, 2010, asserted it only via oral argument on that date, and made it without any evidence before the Court. During the status conference, the court requested that Defendants' counsel clarify the factual basis of the Defendants' bona fide error defense. Defendants' counsel responded to the effect that, in the ordinary course of business, SEP was to transmit information about payments to Defendants on a monthly basis via electronic transmission, but that, in this instance, Defendants did not receive

timely information from SEP regarding Plaintiff's payment of the medical bill.[2] Defendants' counsel also described these purported events as a failure of "recording systems" to record payment. Defendants' counsel further argued that this alleged failure to receive electronically transmitted information from SEP constituted an unintentional error in their process because the responsibility for transmitting the payment information was in the hands of a third party.

Defendants have the burden of proof as to bona fide error, and to allow such an unexplored, untested defense at this late juncture causes severe prejudice to Plaintiff and creates a manifest injustice. Should the Court permit the Defendants to present evidence as to its wholly unsubstantiated defense which now blames SEP instead of (or perhaps, in addition to) the Plaintiff, the Court should also permit Plaintiff to re-open discovery and to investigate SEP's alleged error which Defendants suddenly claim absolves them of liability under the FDCPA.

### *Status Conference held November 12, 2010*

Only three days before positing an entirely new, undisclosed "error," Defendants adhered to their steadfast defense that no error had occurred. Then, as an escape hatch, defense counsel asserted that, if an error did occur, it was a bona fide error. At the November 12th status conference, Defendants repeatedly stressed they had a right to continue collection activities because Plaintiff had failed to provide a written dispute. At no time during the November 12 status conference did Defendants mention an error that

---

[2] Plaintiff's recounting of the substance of Defendants' counsel's argument is based on Plaintiff's handwritten notes from the status conference.

was made in spite of good faith compliance with the FDCPA. At no time during the November 12th status conference, or at any date prior, did Defendants allege that a non-party made an error. At no time have Defendants put Plaintiff on notice that SEP itself had committed an error that might absolve Defendants. This Court should hold Defendants to the "error" as presented and prevent their eleventh hour defense of blaming SEP.

### *Defendants never asserted an error as to SEP's procedures any time prior to November 15, 2010.*

In their Answer, filed on August 24, 2009, Defendants included the defense of bona fide error, inclusively claiming as follows:

> If deemed applicable in the alternative, Defendants affirmatively allege that the alleged actions of the Defendants and their agents and employees are protected by the "bona fide error" defense of the Fair Debt Collections (sic) Practices Act, since such actions or inactions, if they occurred, were not intentional and resulted form a bona fide error notwithstanding the Defendants' maintenance of procedures reasonably adapted to avoid such errors.

When Rule 8(c) of the Federal Rules of Civil Procedure is coupled with Rule 9(b), Defendants have a duty in asserting the defense of bona fide error to plead the mistake with particularity. *See, e.g., Racick v. Dominion Law Associates*, Civ. No. 10-cv-66-F (E.D.N.C. Oct. 6. 2010) and *Bradshaw v. Hilco Receivables, LLC*, Civ. No. RDB-10-113 (D. Md. July 27, 2010). (Copies of each are attached hereto as Exhibits 1 and 2.) At a minimum, a complainant (or as positioned here, a defendant) must allege the "time, place, and content of the [mistake], as well as the identity of the person making the [mistake] and what [occurred] thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

4

Defendants provided no factual basis for their defense, plausible or otherwise, to give Plaintiff adequate notice of the nature of the error and of the procedures that were reasonably adapted to avoid such error. Defendants' pleading should have contained enough specificity to give adequate notice to Plaintiff as to the exact nature of the error and the potential applicability of the defense. Defendants' nearly verbatim recitation of § 1692k(c) in their Answer provides no factual averments or plausibility as to their entitlement to the defense. (DE 5.)

Thereafter, Plaintiff served written discovery requests on Defendant ACS on November 25, 2009. Defendants provided Responses on January 14, 2010. Finding the Responses inadequate, Plaintiff requested and received "Amended Defendants' Responses" on January 20, 2010.

Plaintiff's Interrogatory No. 4 requested that Defendant ACS "[i]dentify and describe <u>any and all documents</u> that describe, record, or establish Defendants' methods and techniques used to collect debts" (emphasis added). Defendants' original response was "See Documents Provided." (A copy is attached hereto as Exhibit 3.) Defendants' Amended Response was "See Original Response. The specific methods and techniques may vary between individual clients, but consist generally of the sending of letters and the making of telephone calls." (A copy is attached hereto as Exhibit 4.) The "documents provided" did not contain any information relating to Defendants' processes and procedures with SEP. The "specific methods and techniques" relate solely to Defendants and the consumers, not to SEP.

Plaintiff's Interrogatory No. 5 requested that Defendant ACS "[i]dentify and describe fully any and all computerized, mechanical, manual, or other system(s) that Defendants use, maintain, or operate to record any and all mail, telephone, in-person, or other forms of

5

communications, or attempted communications, with persons or <u>other third parties</u> in connection with the collection of accounts <u>and Defendants' policies and procedures for operating such a system of records</u>." (Emphasis added.) Defendants' original Response was "Defendant uses a group of systems for debt collection, the details of which are best accurately explained in the scheduled depositions." (A copy is attached hereto as Exhibit 5.) After Plaintiff complained about the insufficiency of such a Response, Defendants' Amended Response was "See Original Response. Defendant ACS uses a proprietary computer system that receives client accounts and generates letters and automated telephone calls." (A copy is attached hereto as Exhibit 6.)

Again, the only procedures Defendants revealed were the procedures related to the collection of accounts between Defendants and the consumers, not the procedures related to Defendants' communications with SEP. The Interrogatory expressly requested information relating to "other third parties," yet Defendants provided no information whatsoever that implicated SEP or its procedures. In response, Defendants provided no policies and procedures for operating such a system of records for itself, let alone those policies and procedures pertaining to SEP.

Plaintiff's Interrogatory No. 8 requested that Defendant ACS "[i]dentify and describe the process by which Defendant ACS verifies the debt allegedly owed by the Plaintiff." (A copy is attached hereto as Exhibit 7.) Defendant ACS responded "Defendant ACS checks validity of accounts and totals and collection process offers Plaintiff the opportunity to contest the debt in writing." At no point in this litigation have Defendants submitted evidence thatSEP is to update them as to the status of accounts upon which consumers have made direct payments or that SEP failed to do so in Ms. Russell's case.

Moreover, Plaintiff served Requests for Production of Documents pursuant to Rule 34 on November 25, 2009. In Request No. 9, Plaintiff requested that Defendant ACS produce "any and all documents in the possession or control of Defendants which Defendants claim are in any way relevant to the subject matter of the instant lawsuit.

6

Defendants Response was "Provided." (A copy is attached hereto as Exhibit 8.) In response, Defendants provided no documents pertaining to SEP.

As part of its Rule 26(a)(1) disclosures, Defendants did not list any employee, agent, or person from SEP as having "pertinent knowledge." Defendants did not list any documents or business records relative to SEP in their Rule 26(a)(1) disclosures. (A copy is attached hereto as Exhibit 9.) To date, Defendants have not supplemented their Rule 26(a)(1) disclosures to include any person, employee or agent of Sandhills Emergency Physicians. Similarly, in Defendants' Final Disclosures pursuant to Rule 26(a)(3), no employee, agent, or person from Sandhills Emergency Physicians is listed. (DE 47).

To be clear, a portion of Defendants' defense included casting the blame for their FDCPA violations on the third-party medical provider; however, never until oral arguments at the status conference held on November 15, 2010 did Defendants indicate that an act or omission of SEP forms the very substance of their bona fide error defense. Again, to the absolute contrary, in their Trial Brief filed that very day, there is no mention of procedural breakdown between themselves and SEP (DE 59 at 6.) Rather, the sole basis for any alleged bona fide error defense, as lacking as it may be from a legal standard, is:

> Defendants (sic) procedures included: (1) to ask in its initial letter that the debtor submit any dispute about the debt in writing, and (2) when a debtor calls and gives oral notice that they paid the debt, to then ask that debtor to send in a proof of payment or a copy of the check.[3] (Id.)

Thus, Plaintiff moves the court to restrict Defendants' from offering into evidence any defense based on blaming SEP.

---

[3] Defendants' "proof of payment" defense is rebutted by their own evidence before the Court. It is without dispute that Plaintiff orally disputed the account on 2/6/09, the collector made a note of the dispute without requesting proof of payment. Their own records indicated the account was paid. It was not until Plaintiff's subsequent oral dispute on 2/27/09 that Defendants asked Plaintiff to send in "POP" (proof of payment). Even their own procedures are not entitled to a bona fide error defense, much less the unidentified, undisclosed procedures of a third party.

7

### *Evidence Pertaining to any purported broken procedures of Sandhills Emergency Physicians Should be Excluded*

Federal Rule of Civil Procedure 37(c) governs the failure to disclose or supplement an earlier response. "If a party fails to <u>provide information</u> or <u>identify a witness</u> as required by Rule 26(a) or 26(e), <u>the party is not allowed</u> to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." (Emphasis added.) It is inherently unjust to permit Defendants to proceed with this newly contrived defense. Defendants bear the burden of proof of their error under § 1692k(c). Any information related to such an error made by SEP should have been revealed during discovery so as to afford the Plaintiff with an adequate opportunity to probe the defense.

If Defendants' newly revealed defense is to be believed, they certainly had "verifiable and good" knowledge of the mistake at least by the time SEP informed them that the account had been paid in full on April 9, 2009, just over three months prior to the initiation of this action. Without a doubt, Defendants must have had knowledge of such a mistake by SEP prior the filing of their Trial Brief on November 15, 2010. To raise such a defense at this point strains credulity and cuts against good faith. Plaintiff therefore requests that this Court impose sanctions in accordance with Rule 37(c)(1)(A) through (C).

## MEMORANDUM IN SUPPORT OF AN ALTERNATIVE MOTION TO AMEND THE SCHEDULING ORDER PURSUANT TO FED. R. CIV. P. 16(b)(4)

In the alternative, Plaintiff requests an amendment to the Scheduling Order. For the foregoing reasons, Plaintiff will suffer severe prejudice that will create a manifest

injustice. Plaintiff is entitled to discover the factual underpinnings of Defendants' newly contrived defense. Up until the eve of trial, Defendants did not put Plaintiff on fair notice of the basis for their bona fide error. As required under Fed. R. Civ. Proc. 16(b)(4), Plaintiff will suffer a manifest injustice which this Court should prevent.

Accordingly, for the foregoing reasons, the Plaintiff requests that this Court amend the Scheduling Order entered in this matter so as to allow the Plaintiff to conduct discovery related to Defendants' newly advanced error.

## *Conclusion*

For the reasons stated hereinabove, to avoid severe prejudice to Plaintiff, any reference to an error by SEP should be restricted, and Plaintiff's Motion in Limine should be granted. In the alternative, to prevent a manifest injustice, further discovery of Defendants' unsubstantiated claims should be permitted.

Respectfully submitted this the 22nd day of November, 2010,

| By: | /s/ Angela Martin | /s/ Suzanne Begnoche |
|---|---|---|
| | ANGELA MARTIN | SUZANNE BEGNOCHE |
| | MartinAttorney at Law, PLLC | Suzanne Begnoche, Attorney at Law |
| | Attorney for Plaintiff | Attorney for Plaintiff |
| | NCSB # 34951 | NCSB # 35158 |
| | 1911 Keller Andrews Road | 312 West Franklin Street |
| | Sanford, NC 27330 | Chapel Hill, NC 27516 |
| | angela@angelamartinlaw.com | begnoche@mindspring.com |
| | T: 919-708-7477/F: 888-872-4232 | Tel: (919) 960-6108; Fax (919)967-4953 |

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
ROCKINGHAM DIVISION
No. 1: 09-cv-515-WWO-WD

| | |
|---|---|
| DIANE RUSSELL<br>Plaintiff,<br><br>vs.<br><br>ABSOLUTE COLLECTION SERVICE;<br>and CHARLTON CLARKSON,<br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## *CERTIFICATE OF SERVICE*

This is to certify that I have this day electronically filed the foregoing **Plaintiff's Brief in Support of Her Motion in Limine** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Counsel for Defendants Absolute Collection Service, Inc., and Charlton Clarkson:

Thomas Carlton Younger, III
Yates, McLamb & Weyher, LLP
P.O. Box 2889
Raleigh, NC  27602-2889
cyounger@ymwlaw.com

Dan Johnson McLamb
Yates, McLamb & Weyher, LLP
P.O. Box 2889
Raleigh, NC  27602-2889
dmlamb@ymwlaw.com

Kenneth D. Perkins, Esq. (Special Counsel pursuant to L.R. 83.1)
209 Broad Street, Suite 220
Sewickly, PA  15143
kperkins@perkinsllc.com

Respectfully submitted, November 22, 2010,

MARTIN ATTORNEY AT LAW, PLLC

By: /s/ Angela O. Martin
      Angela O. Martin, Esq.
      Attorney for Plaintiff