**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
ROCKINGHAM DIVISION
No. 1: 09-cv-515-WWO-WD**

| | |
|---|---|
| **DIANE RUSSELL** | ) |
| **Plaintiff,** | ) |
| | ) **PLAINTIFF'S BRIEF IN** |
| **vs.** | ) **SUPPORT OF HER MOTION** |
| | ) **MOTION IN LIMINE;** |
| **ABSOLUTE COLLECTION SERVICE,** | ) **OBJECTIONS TO DEFENDANT'S** |
| **INC.;** | ) **RULE 26(a)(3) DISCLOSURES** |
| **Defendant.** | ) |

## MEMORANDUM IN SUPPORT OF MOTION IN LIMINE

This Court should issue an Order preventing Defendant from asserting any defense or introducing any evidence in direct or rebuttal that blames any other entity for not providing it with a payment receipt. Because of the chameleon-like nature of the non-party that is allegedly at fault for Defendant's own violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692 *et seq.* it is difficult to pinpoint the exact entity with any degree of certainty. To date any such entity would include: Sandhills Emergency Physicians, P.A., McKesson Corporation and PST Services, Inc.. Any other undisclosed, similarly situated non-party should likewise be included for exclusion. Moreover, Plaintiff objects to Defendant's Rule 26(a)(3) Disclosures as untimely and not properly disclosed.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed this action on July 16, 2010 (D.E. 1), alleging various violations of the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.* and North

1

Carolina's analogous statute, N.C. Gen. Stat. §§ 58-70 *et seq.*, Prohibited Acts by Collection Agencies.[1] Over 16 months later, and literally on the eve of the trial slated for November 16, 2010, Defendant birthed a new defense: a never before revealed "mistake" or error that it contends absolves itself of liability under the Act. Up until November 15, 2010, its defense was to "blame the consumer" for not submitting physical proof of payment. Without abandoning that defense, Defendant launched a brand new defense: "blame **Sandhills Emergency Physicians**" (**SEP**), their presumed client. In February of 2011, Defendant shifted to "blame **McKesson Corporation**" (or one of its subsidiaries) whose role remains puzzling. Now, in March of 2011, just two weeks before trial, Defendant's ***bona fide*** error defense has specifically shifted to "blame **PST Services, Inc.**" supposedly a subsidiary of McKesson, whose 667 pages of documents and separate affidavit furnished by means of subpoena and served on Plaintiff on March 18, 2011 (even if they were admissible) confound and confuse the issue by directly conflicting with the documents already supplied by Defendant. The recently provided information also directly conflicts with information informally provided to Plaintiff by Ms. Awilda Rodriguez, an employee of McKesson Corporation or PST Services, Inc. at a time when there was no reason for McKesson Corporation or PST Services, Inc. to obfuscate the truth.

Plaintiff requests that this Court issue an order preventing Defendant from asserting a bona fide error defense based on any alleged procedural breakdown between

_____

[1] The bona fide error defense does not exist under the state law claims which have been brought in this action.

itself, Sandhills Emergency Physicians, P.A., McKesson Corporation, PST Services, Inc. and any other as yet unrevealed entity that resulted in Defendant's violations of federal and state debt collection laws. Such an assertion of the bona fide error defense comes too late in the game to be permitted to go forward.

Before a defendant is entitled to the bona fide error defense, it must first admit that a violation of the Act occurred, that it had reasonable procedures in place to avoid such an error, and the act itself was unintentional. § 1692k(c); Jerman v. Carlisle, McNellie,Rini, Kramer & Ulrich LPA, 130 S.Ct. 1605 (2010); Allen v. Checkredi of Kentucky, LLC, No. 09-103-DLB (E.D. Ky. Nov. 17, 2010). Throughout this litigation, Defendant has argued that it made no error and that it has not violated any law. This position has been re-declared in the re-opened Rule 30(b)(6) depositions wherein all three representatives of Defendant emphatically swore Defendant made no mistake in handling Plaintiff's account:[2]

1) Deponent Laura Pavesi, Rule 30(b)(6) designee, Ms. Begnoche questioning, dated February 18, 2011, page 61, lines 2-8:

> 2 Q Okay. From your--from your knowledge of this
> 3 matter, do you--do you feel that you made any
> 4 mistakes in handling Ms. Russell's account?
> 5 A No.
> 6 Q Who at--who at Absolute Collection Service made—
> 7 may have made a mistake?
> 8 I'm not aware of anybody who made a mistake.

2) Deponent Christopher Malmfelt, Rule 30(b)(6) designee, Ms. Begnoche questioning, dated February 18, 2011, page 22, lines 6-13:

---

[2] The Deposition extracts are attached as Exhibits to the Declaration of Angela O. Martin, filed with the Motion.

> 6 Q Okay. In your position at Absolute Collection
> 7 Service, what mistakes or mistake did you make in
> 8 handling this matter with Ms. Russell's account?
> 9 A None.
> 10 Q Okay. To your knowledge, who at Absolute
> 11 Collection Service made a mistake in handling Ms.
> 12 Russell's account?
> 13 A No one.

3) Deponent <u>Stanley Iradi</u>, Rule 30(b)(6) designee, Ms. Begnoche questioning, dated February 18, 2011, page 22, lines 3-13:

> 3 Q Okay. Okay. In your position at Absolute
> 4 Collection Service, what mistake or mistakes did
> 5 you make in handling Ms. Russell's account in this
> 6 matter?
> 7 MR. YOUNGER: Objection to the form. Go
> 8 ahead.
> 9 A In my opinion I made no mistakes.
> 10 Q Okay. To your knowledge, who at Absolute
> 11 Collection Service made a mistake in handling Ms.
> 12 Russell's account?
> 13 A No one.

Still as a fall-back position, and in an effort to have it both ways, Defendant has consistently asserted a bona fide error defense based on lack of written proof of payment from the consumer. Most recently, Defendant demonstrably clung to its "proof of payment" defense by including it as the <u>sole</u> basis for the bona fide error in its Trial Brief, which was filed only hours before the November 15, 2010 status conference. (D.E. 59 at 6.)

Defendant conceived its new defense at the final pre-trial status conference held on November 15, 2010, asserted it only via oral argument on that date, and made it without any evidence before the Court. During the status conference, the Court

4

requested that Defendants' counsel clarify the factual basis of the Defendants' bona fide error defense. Defendants' counsel responded to the effect that, in the ordinary course of business, **SEP** was to transmit information about payments to Defendants on a monthly basis via electronic transmission, but that, in this instance, Defendants did not receive timely information from **SEP** regarding Plaintiff's payment of the medical bill.[3] Defendants' counsel also described these purported events as a failure of "recording systems" to record payment. Defendants' counsel further argued that this alleged failure to receive electronically transmitted information from **SEP** constituted an unintentional error in their process because the responsibility for transmitting the payment information was in the hands of a third party. Never was any other entity such as McKesson Corporation or PST Services, Inc., or the like, even hinted or suggested at by Defendant.

Presumably, after 18 months of litigation the response would have and should have been consistent: blame the consumer. However, without any forewarning, during oral argument, Defendant put forth its completely undeveloped, previously unasserted defense that **SEP** had failed to provide reports. Never in court did counsel for the Defendant, the Assistant Secretary for the Defendant, mention "McKesson Corporation" or "PST Services, Inc." or any other entity. Thus, Defendant has even misled and concealed the true identity from this honorable Court. Defendant's actions ought not be condoned.

---

[3]     Plaintiff's recounting of the substance of Defendants' counsel's argument is based on Plaintiff's handwritten notes from the status conference.

5

Defendant's Answer dated August 24, 2009 contained no mention of a defense based on a mistake made by McKesson Corporation, or PST Services, Inc, but rather affirmatively stated that "[p]ayment was not reported [to Defendant] by **SEP** until April 9, 2009". The truth would be that payment reports always came from **McKesson Corporation** or **PST Services, Inc.**, including the information received on April 9, 2009. The Answer further affirmatively stated "that through normal reporting procedures with **SEP**, that **SEP** would report Plaintiff's payment to [Defendant]". The truth would be that normal reporting procedures involved **McKesson Corporation** or **PST Services, Inc.** and **SEP** never reports to Defendant at all. Furthermore, Defendant wrongfully asserted "that **SEP** would report Plaintiff's alleged payment to [Defendant]". The truth would be that normal reporting procedures involved **McKesson Corporation** or **PST Services, Inc..** According to Defendant's recent position, **SEP** never reports. Likewise, as Defendant's First Affirmative Defense contained within its Answer, Defendant alleged "actions or inactions of third parties" without ever disclosing the identity of McKesson Corporation and PST Service, Inc.. Moreover, the affirmative defense of bona fide error was pled in the alternative only "if they occurred" and again never mentioned any third party. (D.E. 5, ¶¶ 32, 33, 40, Aff. Defs. ¶¶ 1 and 3, respectively). (Emphases added.)

As further evidence that Defendant has hid the ball from Plaintiff on this pivotal issue, Defendant's untimely Rule 26(a)(1) disclosures (previously submitted at D.E. 64-7) dated December 16, 2009 did not list Laura Pavesi at all. Ms. Pavesi has just now, on February 4, 2011, over one year after the initial discovery deadline, been identified as the "Manager of Payment Posting and Credit Reporting" and is the singular person in charge

of the very department and processes at issue within Defendant's **own** organization. Surely, Defendant was aware of her nexus to this case when the disclosures were made, if Defendant is to be belived. Likewise, Defendant's Rule 26(a)(1) disclosures did not mention McKesson Corporation or PST Services, Inc. **or** even Sandhills Emergency Physicians, P.A. (except as the creditor in the account information).

Thereafter, Plaintiff served written discovery requests on Defendants on November 25, 2009. Defendant provided Responses on January 14, 2010. Finding the Responses inadequate, Plaintiff requested and received "Amended Defendants' Responses" on January 20, 2010. The Responses did not contain any information relating to Defendants' processes and procedures with Sandhills Emergency Physicians, P.A., McKesson Corporation, or PST Services, Inc.. The "specific methods and techniques" related solely to Defendant and the consumers, not to Sandhills Emergency Physicians, P.A., McKesson Corporation, or PST Services, Inc.. The only procedures Defendants revealed were the procedures related to the collection of accounts between Defendants and the consumers, not the procedures related to Defendants' communications with Sandhills Emergency Physicians, P.A., McKesson Corporation, or PST Services, Inc.. The Interrogatory expressly requested information relating to "other third parties," yet Defendants provided no information whatsoever that implicated Sandhills Emergency Physicians, P.A., McKesson Corporation, or PST Services, Inc. or their procedures. Defendant never produced any documents related to Sandhills Emergency Physicians, P.A., McKesson Corporation, or PST Services, Inc..

Plaintiff conducted depositions under Rule 30(b)(6) and deposed Defendant's designees Stanley Iradi and Christopher Malmfelt on January 27, 2010. Throughout the depositions Defendant made reference to Sandhills Emergency Physicians, P.A. (SEP).

1) Deponent <u>Christopher Malmfelt</u>, Rule 30(b)(6) designee, Ms. Martin questioning, dated January 27, 2010, page 66, lines 1-7:

```
1  Q    Is there a procedure within Absolute that would
2        prevent a collector from contacting SEP to check
3        the status of an account?  Are they barred from
4        doing so?
5  A     No.  But if we contacted Sandhills for every one of
6        their patients that told us they had paid, we
7        wouldn't be doing any other business.
```

2) Deponent <u>Christopher Malmfelt</u>, Rule 30(b)(6) designee, Ms. Martin questioning, dated January 27, 2010, page 11, lines 12-17 and page 12, lines 1-4:

**11**
```
12  Q What is the precise relationship between Absolute
13     Collections and SEP, which is the physicians group
14     that referred the account to you or sold it, or
15     whatever?  What's the relationship there?
16  A They are a client.  They place accounts with us for
17     resolution.

23  Q So when SEP places an account with you, what is the
24     procedure?
```
**12**
```
1  A They place accounts with us, we confirm the number
2     of accounts and the dollars that they've placed
3     with us, and we begin to resolve the--the balance
4     by contacting their patients.
```

3) Deponent <u>Stanley Iradi</u>, Rule 30(b)(6) designee, Ms. Martin questioning, dated January 27, 2010, page 87, lines 12-20:

```
12  Q    Are you familiar with Sandhills Emergency
13       Physicians, SEP, as your client?
14  A    Yes, as one of our clients, I am, yes.
```

15  Q    Do you have communications with them?
16  A    Very seldom.  Usually, the communications I have
17        with--with a client are questions, you know, such
18        as have they received a payment, can we offer a
19        discount to one of our patients, things of that
20        nature.

4)  Deponent <u>Stanley Iradi</u>, Rule 30(b)(6) designee, Ms. Martin questioning, dated
    January 27, 2010, page 88, lines 4-7:

    4  Q    Okay.  In your capacity as the operations manager,
    5        do you have a point of contact at SEP?
    6  A    Greg Nolan is--is the name that I normally would
    7        call.

5)  Deponent <u>Stanley Iradi</u>, Rule 30(b)(6) designee, Ms. Martin questioning, dated
    January 27, 2010, page 100, lines 10-24 and page 101, lines 1-4:

                                   **100**
    10   The complaint was that the account had already been
    11   paid, if I'm—I'm not mistaken.  So I picked up the
    12   telephone, and I called Sandhills Emergency
    13   Physicians.
    14   And I eventually got up with Greg Nolan,
    15   who at that time, and probably still is, was a
    16   manager from that billing office.  Greg Nolan had
    17   told me that day that the account was paid in full
    18   on January the 8th of 2009.
    19   At that point, I responded back to the
    20   Better Business Bureau.
    21   I had the exact wording right here.
    22   have contacted Sandhills, who have advised they
    23   received a payment and it was posted to their
    24   records on 1-8 of 2009.  I have marked the subject
                                   **101**
    1    account as paid in full, and I apologize to Ms.
    2    Russell for any inconvenience we may have caused.
    3    This account has not been reported to the national
    4    credit bureaus.  Stan Iradi, operations manager.

6) Deponent <u>Stanley Iradi</u>, Rule 30(b)(6) designee, Ms. Martin questioning, dated January 27, 2010, page 104, lines 21-24 and page 105, lines 1-3:

**104**

21 Q    Can I stop you?  When--if that were the case but
22         you heard it from the consumer instead, would you
23         go back to SEP or do you always wait for
24         information to come from SEP?
**105**
1 A      No, I--if the consumer called me and said that the
2         client wanted the account back, I put--I put the
3         burden on the consumer to prove that.

7) Deponent <u>Stanley Iradi</u>, Rule 30(b)(6) designee, Ms. Martin questioning, dated January 27, 2010, page 107, lines 22-24 and page 108, lines 1:

**107**

22 Q Your--for the Better Business Bureau, did--when
23      they told you--when you inquired of--you inquired
24      of SEP, what was the person's name at SEP?
**108**
1 A  Greg Nolan.

It was never revealed to Plaintiff until February 4, 2011 that "Sandhills" and "SEP" honestly means McKesson Corporation. It did not become clear until March 18, 2011 that McKesson Corporation probably means "PST Services, Inc.". The relationships between and among these entities remain unknown. Despite Defendant's sworn testimony, Greg Nolan did not ever work for Sandhills Emergency Physicians, P.A.. Despite Defendant's sworn testimony, Greg Nolan does not manage any office at Sandhills Emergency Physicians, P.A.. Despite Defendant's sworn testimony, Defendant does not go back and forth on account information to Sandhills Emergency Physicians, P.A. Despite Defendant's sworn testimony, Mr. Iradi did not contact Sandhills Emergency Physicians, P.A. after receipt of Plaintiff's complaint to the Better Business

Bureau. Despite sworn testimony, Sandhills Emergency Physicians, P.A. does not place accounts with Defendant.

To be clear, a portion of Defendant's defense included casting the blame for their FDCPA violations on the third-party medical provider; however, never until oral arguments at the status conference held on November 15, 2010 did Defendant indicate that an act or omission of **Sandhills Emergency Physicians, P.A.** (notably **not McKesson Corporation**, or **PST Services, Inc.**) forms the very substance of its bona fide error defense. Defendant did not reveal McKesson Corporation's existence to Plaintiff until February 4, 2011. McKesson Corporation revealed the existence PST Service, Inc. to Plaintiff on March 18, 2011. Now, incredulously, Defendant seeks to offer into evidence at trial the very evidence it hid from Plaintiff. (D.E. 87, <u>Defendants'</u> (sic) <u>Amended Pretrial Disclosures</u> Pursuant to Rule 26(a)(3)).

Moreover, Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment dated September 22, 2010 affirmatively states under oath that "Defendant contractually relies on **<u>its hospital clients</u>** to promptly report payments on accounts that have been referred to it" (emphasis added) indicating a natural presumption of **Sandhills Emergency Physicians, P.A.** in this case and conceivably **<u>not</u>** indicating an undisclosed, unidentified **McKesson Corporation** or **PST Services, Inc.**. By point of fact, McKesson Corporation and PST Services, Inc. are not believed to be "hospitals" and there is absolutely no mention of either entity in the Opposition. (D.E. 30 at 4 and D.E. 30-1).

On November 1, 2010, Defendant's Final Pre-trial disclosures failed to list Laura Pavesi, McKesson Corporation, PST Services, Inc. or any related documents. (D.E. 47).

More significantly on November 1, 2010, Defendant filed its Motion for Leave to File a Trial Brief, expressly noting "[a] Trial Brief is an attempt by the parties to inform the Court of the basic facts, claims or causes or action, the basic positions of each party, and any potential issues that may arise at the trial of this action. Defendants wish to assist the Court to understand the relevant issues prior to trial for the more efficient administration of justice. For example, one issue that would be addressed in a trial brief is the issue of mitigation." (D.E. 46 at 3). Although purporting to desire an "efficient administration of justice" and noting that the "Court will benefit from a trial brief so it may learn of any additional issues prior to trial, and potentially help expedite the trial of this case;" Defendant still failed to mention the very existence of McKesson Corporation or PST Services, Inc. in either its Motion or the Trial Brief which followed on November 15, 2010. (D.E. 59). In direct contradiction of Defendant's own statements, the untimely revelation of Laura Pavesi, McKesson Corporation, PST Services, Inc. and their respective documents has hindered the administration of justice and thwarts the trial of this case.

On November 12, 2010, at a status conference, Defendant repeatedly stressed it had a right to continue collection activities because Plaintiff had failed to provide a written dispute. At no time during the November 12th conference did Defendant mention an error that was made in spite of good faith compliance with the FDCPA. At no time during the November 12th conference, or at any date prior, did Defendant allege that Sandhills Emergency Physicians, P.A., McKesson Corporation or PST Services, Inc., (the latter two being non-party, foreign corporations) made an error which absolves Defendant

from liability under the FDPCA. Significantly, had such an error been <u>genuinely</u> made and had such disclosures been <u>genuinely</u> submitted and if a creditor's error can <u>genuinely</u> form as a legal safety net in an FDCPA action, settlement of this case may have been more likely as Plaintiff could have weighed whether, in fact, an error had occurred. It is not Plaintiff's desire to litigate against bona fide errors made by debt collectors in the lawful collection of defaulted accounts. Thus, Defendant's failure to disclose has impeded the litigation <u>and</u> the settlement of this case.

By point of fact, on November 15, 2010, Defendant's sole basis for its bona fide error defense in its Trial Brief was **wholly** consistent with its prior position and nothing was surprising: "Defendant clearly had procedures in place to avoid this type of problem [collecting on a paid account], and this evidence **has been previously cited** by the Court. Defendants procedures (sic) included (1) to ask in its initial letter that the debtor submit (sic) any dispute about the debt in writing, and (2) when a debtor calls and gives oral notice that they had paid the debt, to then ask that debtor to send in a proof of payment or copy of the check." (D.E. 59 at 5-6) (emphasis added). Nowhere does Defendant even mention Sandhills Emergency Physicians, P.A., McKesson Corporation, or PST Services, Inc. in the entirety of its Trial Brief or even hint at a defense based thereon; rather, Defendant adhered steadfast to its "blame the consumer" defense. The failure to even mention a defense based on Sandhills Emergency Physicians, P.A., McKesson Corporation, PST Services, Inc. and their documents on the literal eve of trial highly suggests Defendant's omission was at that time genuine: none of these play a role in Defendant's case or defenses. Only with the passage of time, after being pressed by the

13

Court, and perhaps after realizing its position of "blame the consumer" was drowning in the tsunami of authority regarding the strict liability nature of the FDCPA and the lack of writing as a requirement for protection against certain violations of the Act, has Defendant now boldly asserted a new bona fide error. The delay of the disclosure of this defense itself cuts against good faith.

At no time prior to February 4, 2011, after this case had been rescheduled for trial twice, did Defendant put Plaintiff on notice that McKesson Corporation or PST Service, Inc. had committed an error that might fully absolve Defendant from the violations it still refuses to admit. This Court should hold Defendants to the "error" as presented *ab initio* and prevent their eleventh hour defense of blaming Sandhills Emergency Physicians, P.A., McKesson Corporation, PST Services, Inc. or any other undisclosed, unidentified entity.

## **Legal Authority**

**QUESTION PRESENTED**: Should a party be permitted to present evidence which were never revealed to the other party until the eve of trial (or even later) where the failure to disclose is not substantially justified and the nondisclosure causes great harm, even in the absence of a finding of bad faith?

This Court should use the five factors delineated by Judge Wilkins in Southern States Rack and Fixture, Inc. v. Sherwin Williams Company, 381 F.3d 592, 597 (4th Cir. 2003) as its North Star and exclude Defendant's undisclosed defense, its witnesses and their documents. The factors are: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which

allowing the evidence would disrupt the trial; (4) the importance of the evidence; (5) the nondisclosing party's explanation for its failure to disclose the evidence."

Though obviously factually different, procedurally this case is at the same juncture as <u>Southern States</u>. To be sure, it is difficult to see how Defendant's deception, defense and discovery failures in this case are attributable to anything but bad faith. However, this Court should exclude the evidence even absent a finding of bad faith because the purpose of the discovery rules and the exclusion sanction is to prevent surprise and prejudice to the other party. Thus, the burden is on Defendant to show its failure to disclosure is "either justified or harmless." (Id. at 596.)

Briefly applying the five factors:

**1. Surprise to Plaintiff**

Plaintiff was shocked to learn of an entity known as "McKesson Corporation" on February 4, 2011. Plaintiff was utterly dismayed to learn of "PST Services, Inc." six weeks later on March 18, 2011. These revelations occurred after many months of litigation activities and after testimony through written discovery and depositions (noted above) that never even hinted that an entity other than Sandhills Emergency Physicians, P.A. was involved in Plaintiff's account. As noted above, Defendant's own sworn testimony consistently named Sandhills Emergency Physicians, P.A., **not ever** McKesson Corporation or PST Services, Inc.. Similarly, this Court should be surprised that when it re-opened discovery regarding Defendant and Sandhills Emergency Physicians, Inc. that the discovery would lead to the involvement of two unknown, undisclosed, unrelated,

foreign corporations which are apparently longtime business colleagues of Defendant who has, and has always had, information pertinent to this case.

### 2. Plaintiff's ability to cure the surprise

In the eight weeks left before trial, down dwindled down to two, Plaintiff has tried everything to cure the surprise. Plaintiff has sought and received the re-opening of discovery on two brief occasions for two short time periods on this issue. Plaintiff has issued and served Subpoenas Duces Tecum on Sandhills Emergency Physicians, P.A. and McKesson Corporation. Plaintiff has subpoenaed McKesson Corporation for depositions in Jacksonville, Florida. Plaintiff has received and responded to McKesson Corporation's objection to the subpoena. Plaintiff has attempted to invoke the contempt powers of this Court to compel McKesson Corporation to attend the deposition. McKesson now refuses to participate in a deposition and that fight, if it is to be waged, will be waged in the Middle District of Florida with the opening of a new proceeding at great expense of time, money and resources and further delay of this action which will celebrate its second birthday in July of this year, nearly an unheard of length of time for an FDCPA action.

### 3. The extent to which allowing the evidence would disrupt the trial

Allowing this evidence disrupts the trial because Plaintiff will be unable to present contradictory evidence. The trial of this matter would be delayed indefinitely. Absent the inclusion of this undisclosed evidence and this bona fide error defense, all of the witnesses to this action are within 100 miles of the Court, as always believed. This court would have to amend the scheduling order again to even permit any further depositions to occur.  At some point, justice delayed is justice denied. Defendant's actions and

omissions and blatant misrepresentations directly caused this problem. The trial should not be re-scheduled again due to its malfeasance.

### 4. The importance of the evidence

The evidence is crucial, without which Defendant's bona fide error on the basis of Sandhills Emergency Physicians, P.A., McKesson Corporation, PST Services, Inc. or some other entity cannot succeed because it cannot be put forward. But that's the penalty Defendant ought to pay for this morass it has created. "The fact that the testimony might be helpful to [Defendant's] case in the eyes of the jury also points out why it should have been disclosed in a timely manner." (Southern States 318 F. 3d at 598-9.) To be clear, Defendant is entitled to assert its properly, timely disclosed bona fide error of "blame the consumer". However, this last minute defense, which is anything but genuine, must be denied from the outset.

### 5. The nondisclosing party's explanation for its failure to disclose the evidence.

Since Defendant has not been given an opportunity, it should be permitted to explain its failure. Plaintiff is hard pressed to come up with something that would justify Defendant's failures in light of the history of this case.

### Exclusion Is The Proper Remedy for Failure to Disclose

Rule 37(c)(1) explicitly states that if a party fails to disclose information required to be disclosed by Rules 26(a) or (e), the party with the obligation to disclose is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The exclusion-

of-evidence sanction was intended by the drafters of the rule to be "automatic," (see Fed. R. Civ. P. 37(c), advisory committee note of 1993) See 7-37 Moore's Federal Practice, § 37.60[2][b] (Matthew Bender & Company, Inc., 3d ed.). "If a party, without substantial justification, fails to provide information or identify a witness as required by Rule 26(a) or (e), or fails to amend a prior response to discovery as also required by Rule 26(e), the party may not use testimony from that witness or the undisclosed information as evidence at trial, at a hearing, or in connection with a motion, unless the failure to disclose was harmless. In lieu of a preclusion sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions" … "The purpose of this sanction is to provide parties with an incentive to timely disclose all material evidence in support of their positions that they intend to use at any point during the course of the litigation, thus attacking the temptation some parties might feel to try to gain a tactical advantage at trial by exposing for the first time at that stage evidence that is favorable to their position." Id. at § 37.60[1].

Under the facts of this case, the failure to disclose could never be called "substantially justified" within the meaning of Rule 37(c)(1). The extensive nature of the evidence and its relevance were obviously known to Defendant from the beginning, even pre-suit. It is inherently unjust to permit Defendant to proceed with this newly contrived defense two weeks before trial. Defendant bears the burden of proof of their error under § 1692k(c). Any information related to such an error made by Sandhills Emergency Physicians, P.A., McKesson Corporation, or PST Services, Inc., or any other undisclosed

entity should have been revealed during discovery so as to afford the Plaintiff with an adequate opportunity to probe the defense.

Even if the evidence had been, at one point, accidentally overlooked, that would still not excuse the total failure to supplement and correct the initial disclosures at a later time, because Rule 26(e)(1) and (e)(2) require the party making initial disclosures to supplement and correct those initial disclosures. Without a doubt, Defendants must have had knowledge of such a mistake by Sandhills Emergency Physicians, P.A., McKesson Corporation, or PST Services, Inc. prior to the filing of its Trial Brief on November 15, 2010. For these matters to be revealed to Plaintiff at exactly eight weeks prior to the third scheduled trial of this matter is plainly wrong. To be entitled to raise such a defense at this point strains credulity, cuts against good faith, and renders the Rules pertaining to disclosures and discovery procedures a virtual nullity to be followed only at whim.[4]

The reasons why the failure to disclose were not "harmless" within the meaning of Rule 37(c)(1) have been outlined above. No other remedy will remotely put Plaintiff in the position it would have been in had Defendant fulfilled its duties to disclose. The

---

[4] See, e.g., Mutual Federal Savings & Loan ass'n v. Richards & Assoc, Inc., 872 F.2d 88, 92 (4th Cir. 1989) (quoting Nat'l Hockey League v. Metropolitan Hockey Club Inc., 427 U.S. 639, 643 (1976) ("Not only does the noncomplying party jeopardize his or her adversary's case by such indifference [to the discovery rules], but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct."); (Gardendance, Inc. v. Woodstock Copperworks, LTD., 230 F.R.D. 438, 448 (M.D.N.C. 2005) ("This type of obstreperous conduct can and should be sanctioned by the courts, or the rules of discovery would have no force at all."); Unifi Export Sales, LLC v. Mekfir Int'l Corp., 233 F.R.D 443 (M.D.N.C. 2005)("The upcoming trial is less than two months away and it would be manifestly unfair to require the plaintiffs to go to trial and defend against a counterclaim or to attempt to counter the defendants' defenses, when defendants have failed to provide meaningful discovery."); Stockhausen, Inc. v. American Soil Technologies, No. 1:07cv703 (M.D.N.C. March 9, 2009), 2009 U.S. Dist. LEXIS 17860, (issuing a default judgment pursuant to Rule 37(d))("[T]he Court (Mag. J. Sharp) has found bad faith on the part of Defendant and extreme prejudice to Plaintiff, which stands without critical discovery on the brink of the trial date." )

failure to disclose in this case clearly resulted from bad faith and gamesmanship, and there is no conceivable reason why Defendant should not bear the penalty specified in the Rule for this conduct.

## Conclusion

For the reasons stated hereinabove, Plaintiff's Motion in Limine should be granted and her Objections sustained.

Respectfully submitted this the 22nd day of March, 2011,

MARTIN ATTORNEY AT LAW, PLLC

By: /s/ Angela Martin

Angela O. Martin, Esq.
NC Bar 34951
1911 Keller Andrews Road
Sanford, North Carolina 27330
(919) 708-7477
FAX: (888) 872-4232
angela@angelamartinlaw.com
ATTORNEY FOR THE PLAINTIFF

**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
ROCKINGHAM DIVISION
No. 1: 09-cv-515-WWO-WD**

| | |
|---|---|
| **DIANE RUSSELL** | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **ABSOLUTE COLLECTION SERVICE;** | ) |
| **and CHARLTON CLARKSON,** | ) |
| **Defendants.** | ) |

*CERTIFICATE OF SERVICE*

This is to certify that I have this day electronically filed the foregoing **Plaintiff's Brief in Support of Her Motion in Limine** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Counsel for Defendants Absolute Collection Service, Inc., and Charlton Clarkson:

Thomas Carlton Younger, III          Dan Johnson McLamb
Yates, McLamb & Weyher, LLP          Yates, McLamb & Weyher, LLP
P.O. Box 2889                                  P.O. Box 2889
Raleigh, NC  27602-2889                Raleigh, NC  27602-2889
cyounger@ymwlaw.com                  dmlamb@ymwlaw.com

Kenneth D. Perkins, Esq. (Special Counsel pursuant to L.R. 83.1)
209 Broad Street, Suite 220
Sewickly, PA  15143
kperkins@perkinsllc.com

Respectfully submitted, March 22, 2011,

MARTIN ATTORNEY AT LAW, PLLC

By: /s/ Angela O. Martin
         Angela O. Martin, Esq.
         Attorney for Plaintiff