IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
ROCKINGHAM DIVISION

| | |
|---|---|
| DIANE RUSSELL,                    )<br>    Plaintiff    )<br> v.                                )<br>                 )<br>ABSOLUTE COLLECTION SERVICE, INC., )<br>    Defendant.   )<br>_____  ) | No. 1:09-cv-515 |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTIONS FOR NEW TRIAL AND RELIEF FROM JUDGMENT**

**Introduction**

This matter comes before the Court on Defendant Absolute Collection Service, Inc.'s ("Defendant" or "ACS") Motion for New Trial and Relief from Judgment ("Motion") entered on April 14, 2011 (Doc. 103), pursuant to Rules 59and 60 of the Federal Rules of Civil Procedure. Defendant's Motion was timely filed on May 12, 2011. (Doc. 106) At the same time, Defendant moved the Court for additional time to file a brief in support of its Motion. (Doc. 107) The Court allowed Defendant additional time to serve a brief in support of its Motion on May 19, 2011 and ordered that Defendant submit its brief on or before June 2, 2011. (Doc. 110) Defendant, by and through undersigned counsel, now submits its brief in support of its Motion.

**Relevant Facts**

The relevant facts in this matter are set forth in the Affidavit of Christopher Malmfelt. (Doc. 30-1) Importantly, ACS did not receive notice of payment on the account from SEP until April 9, 2009.

## Procedural History

Plaintiff filed suit against Defendant on July 16, 2009 seeking damages for Defendant's alleged abusive debt collection actions pursuant to the FDCPA, as well as various North Carolina state laws. In its Answer, ACS denied that it violated the FDCPA because it merely requested Plaintiff to provide proof of payment and only continued collection efforts after Plaintiff refused to do so. (Doc. 5). In the alternative, ACS pled the "bona fide error" defense of the FDCPA. (*Id.*)

On March 1, 2010, Plaintiff filed a motion for partial summary judgment as to her FDCPA claim with respect to liability, leaving the issue of damages to the jury. (Doc. 17) In response to Plaintiff's motion for partial summary judgment, ACS submitted the aforementioned Affidavit of Christopher Malmfelt. (Doc. 30-1) Paragraph Five of Malmfelt's Affidavit sets forth Defendant's bona fide error defense. In short, ACS did not benefit in any way by the actions alleged to be in violation of the FDCPA in this case.

On October 27, 2010, the Honorable Wallace W. Dixon, United States Magistrate Judge, recommended that Plaintiff's Motion for partial summary judgment be denied. (Doc. 43) Since Plaintiff failed to dispute the debt in writing, as specifically required by 15 U.S.C. § 1692g(b), the Magistrate found that ACS had every right to continue collection efforts, and its failure to contact SEP to inquire as to whether Plaintiff had paid the debt to SEP did not make Defendant liable under the FDCPA.

By Order dated January 10, 2011, Judge Osteen denied plaintiff's motion for partial summary judgment. (Doc. 74) In his Order, Judge Osteen found that there were issues of fact as to Plaintiff's claim under the FDCPA, at least as to Defendant's

affirmative defense of bona fide error. (Doc. 74)  Nevertheless Judge Osteen allowed Plaintiff's Motions in Limine (Docs. 52, 62, and 89) by Order dated April 7, 2011 (Doc. 96) and struck Defendant's bona fide error defense in its entirety.  Thereafter, the Court denied Defendant's motion for directed verdict at the close of Plaintiff's evidence despite the fact the Plaintiff offered no evidence that the debt was disputed in writing.  Although the question of whether or not Defendant's actions were "abusive" was a question for the fact finder, the Court allowed Plaintiff's Motion for Directed Verdict finding that ACS had violated the FDCPA.  Thereafter, the jury returned a verdict in the amount of $37,501.00 against Defendant. The pending post-trial motions followed.

## Legal Standard:  Motion for New Trial

Rule 59 of the Federal Rules of Civil Procedure allows a party to seek from a court an alteration or amendment of a previous judgment. Fed.R.Civ.P. 59(e). There are three circumstances that merit granting a Rule 59(e) motion: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *United States ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 290 (4th Cir.2002) (citation and quotations omitted). "Mere disagreement does not support a Rule 59(e) motion." *Hutchinson v. Staton,* 994 F.2d 1076, 1082 (4th Cir.1993). Courts should not grant a Rule 59(e) motion lightly, however, because "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F .3d 396, 403 (4th Cir.1998) (quotations and citation omitted).

3

**Legal Standard: Motion for Relief from Judgment**

Under Rule 60(b) of the Federal Rules of Civil Procedure, a party may move for relief from a final judgment or order if a motion is filed within a reasonable time. Fed.R.Civ.P. 60(b). Disposing of motions filed under Rule 60(b) is generally left to the discretion of the district court. *Werner v. Carbo*, 731 F.2d 204, 206 (4th Cir.1984) (citations omitted). For Rule 60(b) to apply, however, "the movant must make a showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Id*. at 206-07 (citation omitted). Once the moving party satisfies these criteria, that party must fit within one or more of several circumstances in which Rule 60(b) vests the court with authority to grant relief from a final judgment, including:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud ... misrepresentation, or other misconduct of an adverse party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
> (6) any other reason justifying relief from the operation of the judgment.

**ARGUMENT**

I. **THE COURT COMMITTED A CLEAR ERROR OF LAW IN DENYING DEFENDANT'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF PLAINTIFF'S EVIDENCE AS PLAINTIFF FAILED TO INTRODUCE ANY EVIDENCE THAT SHE DISPUTED THE DEBT IN WRITING.**

The trial court has broad discretion in considering motions for new trial. *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 500 (4th Cir.2001), and it may weigh evidence

and consider the credibility of witnesses in making a determination. *Conner v. Schrader-Bridgeport Int'l, Inc.,* 227 F.3d 179, 200 (4th Cir.2000).

A court's starting point in statutory interpretation is the statute's language. *Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 739, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989); *Ford v. Moore,* 296 F.3d 1035, 1038 (11th Cir.2002). Where the text is unambiguous, the interpretation ends. *Am. Bankers Ins. Group v. United States,* 408 F.3d 1328, 1332 (11th Cir.2005). Unless defined otherwise, "words are given their ordinary, plain meaning." *Id.* Only in the rare case where the plain meaning of the text gives an absurd result is there a narrow exception to following the plain, unambiguous meaning of a statute. *United States v. Nix,* 438 F.3d 1284, 1286 (11th Cir.2006).

During the relevant time period, ACS had no knowledge that Plaintiff had paid the outstanding debt as she failed to provide written confirmation of the debt to Defendant as required by the plain language of the FDCPA. 15 U.S.C. § 1692g . Under the language of Section 1692g, unless and until a consumer disputes a debt *in writing*, the debt collector may continue to attempt to collect on the debt, albeit in a manner that is not abusive as defined under the FDCPA. Moreover, during the validation period, the debtor's right to dispute coexists with the debt collector's right to collect. *Durkin v. Equifax Check Services, Inc*., 406 F.3d 410 (C.A.7 (Ill.),2005)

Because Plaintiff failed to dispute the debt in writing, ACS had every right to continue collection efforts, and its failure to contact SEP to inquire as to whether Plaintiff had paid the debt to SEP does not make Defendant liable under the FDCPA. This is particularly true where ACS promptly sought reasonable cooperation for relevant

5

information from the Plaintiff, who flatly refused a request that was neither onerous nor unreasonable. This is not a case where harassing, abusive, or contentious dialogue was present or threats of litigation occurred, and no credit reporting ever resulted.

As set forth in the Affidavit of Malmfelt, ACS spoke with Plaintiff for the first time on December 8, 2008. Plaintiff stated that she would contact SEP, but never followed up with ACS about any such phone call or the payment she issued on December 30, 2008. On February 6, 2008, two months after the initial phone call, Defendant called to collect the debt, and Plaintiff indicated that she had paid the debt to SEP. At that point, ACS simply asked Plaintiff to provide some sort of documentation that the debt had been paid. Plaintiff refused to do so.[1] About two months later, ACS became aware of the payment and stopped collection activity.

During the relevant time period, ACS had every right to continue collection efforts, and its failure to contact SEP to inquire as to whether Plaintiff had paid the debt to SEP does not make Defendant liable under the FDCPA. *Ehrich v. I.C. Sys., Inc.,* 681 F.Supp.2d 265, 273 (E.D.N.Y.2010) ("[I]n order for the consumer to gain his or her rights to verification, the request for debt verification must be made in writing rather than over the phone. 15 U.S.C. § 1692g(b). A phone call, therefore, does not suffice to meet the requirement of written notice...."); *Withers v. Eveland,* 988 F.Supp. 942, 947 (E.D .Va.1997) (stating that "if a consumer contests a debt by telephone rather than in writing, the consumer will inadvertently lose the protections for debtors set forth in the FDCPA; the debt collection agency would be under no obligation to verify the debt and cease all

---

[1] Apparently Plaintiff had no problem providing the same proof of payment to ACS in discovery.

6

Case 1:09-cv-00515-WO-WWD   Document 115   Filed 06/02/11   Page 6 of 20

collection efforts as required by § 1692g(b)"). *Grimsley v. Messerli & Kramer, P.A.*, No. 08-548, 2009 WL 928319 (D. Minn. March 31, 2009) (Plaintiff must send in a written dispute, or a proof of payment, in order to have an actionable claim under the FDCPA).

There is no provision in the FDCPA that imposes duties or responsibilities upon any debt collector beyond those that are specifically enumerated in the Act. Absent a showing of intentional or abusive action by ACS within the provisions of the Act, Plaintiff cannot prove a violation of the FDCPA. In this case, all Plaintiff had to do to stop receiving letters and phone calls from ACS was to dispute the validity of the Debt in writing within thirty days of the December 8, 2008 letter. This is not an unreasonable burden for a consumer to bear. *Gros v. Midland Credit Management, Inc*., 2008 WL 4671717, 9 (N.D.Ill., 2008). Defendant invited the Plaintiff to avail herself of the provisions of Section 1692c(c), and Plaintiff refused to be protected. To suggest that ACS should be faced with liability under the FDCPA is clearly not what was contemplated. Moreover, there was no evidence that the follow up letters or phone calls to Plaintiff were an unreasonable burden on Plaintiff. As such, there was no evidence that Defendant's collection practices were likely to "cause substantial injury to consumers." *Id.* Accordingly, ACS respectfully submits that denying Defendant's Motion for Directed Verdict was a clear error of law and resulted in manifest injustice

II. **THE COURT'S DECISION TO GRANT PLAINTIFF'S MOTIONS IN LIMINE AND STRIKE DEFENDANT'S BONA FIDE ERROR DEFENSE WAS AN ABUSE OF DISCRETION AND RESULTED IN PREJUDICE SO SEVERE THAT A NEW TRIAL IS NEEDED.**

7

If a defendant can show by a preponderance of the evidence that any violation of the FDCPA was unintentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error, then a defendant will not be held liable for a violation of the FDCPA. *See* 15 U.S.C. § 1692k(c). *See Johnson v. Bullhead Investments, LLC,* 2010 WL 118274, 6 (M.D.N.C. 2010). No collection company is perfect and the statute does not require perfection. In recognizing this situation, Congress included the bona fide error defense that says that a company may not be responsible if it shows that it had established policies and procedures in place that were designed to try to prevent errors.

Even if subsequent actions by ACS could somehow in a stretch be viewed as harassing, abusive, false, misleading, or deceptive (as the FDCPA defines such in detail in subsequent sections), then the bona fide error defense clearly applies. ACS had no independent verification of payment and it had absolutely no incentive to waste resources on a debt that is already paid. Evidence in support of the bona fide error defense would have avoided liability as to Plaintiff's claim without any specific reference to how her specific clerical error occurred. However, the Court struck Defendant ACS's bona fide error defense following Plaintiff's Motion in Limine and Objections to Defendant's Amended Rule 26(a)(3) Disclosures dated March 22, 2011. (Doc. 89) The Defendant respectfully submits that it was error and an abuse of discretion by the Court to do so.

A. **Defendant properly complied with Rule 26(a) and (e) regarding initial disclosures, supplemental disclosures, and discovery responses and, therefore, it was improper to sanction the Defendant by striking its bona fide error defense under 15 USC 1692k.**

8

### (1) Background Regarding Discovery

This case was scheduled for trial twice before it was ultimately tried starting on April 7, 2011. After this case was continued from the second trial date, Plaintiff moved the Court to reopen discovery to conduct additional discovery on the Defendant's bona fide error defense. Plaintiff then served additional interrogatories and requests for production of documents asking about the payment processing procedures of ACS and the identity of those persons knowledgeable about those procedures. In its interrogatory answers and supplemental answers to that new discovery, ACS described how SEP's billing agent, McKesson Corporation, or a McKesson subsidiary, would provide weekly "collection posting reports" to it and the procedures surrounding the posting of information from those reports ACS also answered that Laura Pavesi was one of the ACS employees who had knowledge of the payment posting procedure. In responses to newly served Requests for Production of Documents, ACS provided all collection posting reports for SEP accounts for the period December 26, 2008 to February 26, 2009 (which was the alleged time period where Russell's account was assigned to ACS for collection and when Russell says she paid the medical bill directly to SEP).

Also as part of the re-opened discovery, Plaintiff took a second 30(b)(6) deposition of Defendant. This deposition included substantial questioning of Laura Pavesi by Plaintiff. Plaintiff asked Ms. Pavesi at length about Defendant's payment posting procedure, about the "collection posting reports" provided by McKesson, and about Pavesi's contacts at McKesson. Further, some of the collection payment reports that were produced earlier in discovery by Defendant were marked as exhibits in that

9

second 30(b)(6) deposition. In addition to Ms. Pavesi, Chris Malmfelt (the Chief Operating Officer of ACS) also testified in that second 30(b0(6) deposition as to Defendant's general policies and practices regarding payment posting from the collection payment reports.

In addition to all this, Plaintiff served a subpoena on McKesson Corporation requesting documents related to debtor/account payment information provided to ACS regarding SEP patient bills. Apparently the documents produced under that McKesson subpoena were bates-stamped "PSTSERVICESXXXX". This is the first indication to either Plaintiff or Defendant of any potential involvement in this process by a company named PST Services, Inc.

**(2)  Defendant Property Identified Laura Pavesi**

Plaintiff argued that ACS failed to comply with Rule 26 disclosures when it failed to identify Ms. Pavesi in its Rule 26(a) disclosures. However, Plaintiff completely misinterprets supplementation requirements under Rule 26(e).

Under Rule 26(e), no formal supplementation is needed if the additional or corrective information has otherwise been made known to the other parties during the discovery process or in writing. In this case, Ms. Pavesi was identified in ACS's interrogatory answers after discovery was reopened. Since Ms. Pavesi was identified in another discovery response, ACS was not required to formally supplement its prior Rule 26(a) disclosures. Further, Plaintiff actually conducted a lengthy deposition of Ms. Pavesi about the payment processing issues at ACS. This is no possible way that the Plaintiff could contend that she was prejudiced in any way after she took a discovery

10

deposition that included Ms. Pavesi. Notably, Plaintiff listed Ms. Pavesi in Plaintiff's pretrial disclosures as a witness that Plaintiff expected to call to testify. It appears that Plaintiff was completely prepared for Ms. Pavesi's testimony at trial and was not surprised or prejudiced at all.

Further, Rule 26(a) states that a party must identify those witnesses likely to have discoverable information that the disclosing party may use to support its claims or defenses. Originally, ACS never intended to offer Ms. Pavesi as a witness to support its claims or defenses. In Defendant's first two pre-trial disclosures, it only listed Stan Iradi and Chris Malmfelt as witnesses who were going to testify about Defendant's procedures for handling and inputting data from a client collection payment report. The testimony of these witnesses alone was entirely sufficient to support a bona fide error defense, as they explained in the second 30(b)(6) deposition of ACS (which was the second deposition taken by Plaintiff in this case involving Mr. Malmfelt). The only reason that ACS included Ms. Pavesi in its amended pretrial disclosures is because she had been deposed by Plaintiff in the case. The issue over the disclosure of Ms. Pavesi as a witness is a complete red herring as she was completely unnecessary to Defendant's bona fide error defense. Because Ms. Pavesi was identified in discovery and because she was deposed in this matter during discovery, it was an error for the Court to strike the Defendant's bona fide error defense before trial and preclude Ms. Pavesi from testifying at trial.

### (3) Defendant's Properly Identified Documents Included in its Amended Disclosures

Plaintiff next argued that ACS failed to comply with Rule 26 by failing to disclose the existence of certain documents that appeared in ACS's amended pretrial disclosures. Particularly, Plaintiff complains about item numbers 13-17 in Defendant's amended disclosures (Document No. 87 in this case). Most of these documents were the collection payment reports given to ACS that were described above. However, Plaintiff failed to inform the Court that Plaintiff learned about most of these documents during the re-opened discovery period. In fact, some of the "objectionable" documents were actually used by the Plaintiff herself as exhibits in Plaintiff's second 30(b)(6) deposition of ACS. It seems incredulous that the Plaintiff complained that she was prejudiced by the "late" disclosure of these documents when she used some of them in a prior discovery deposition.

Plaintiff contends that she was not made aware about these documents until they were produced by a third party, McKesson Corporation, on or about March 18, 2011. (Doc. 89, p. 2) This is not accurate. In Defendant's discovery responses dated February 4, 2011, Defendant produced the collection payment reports from December 26, 2008 to February 26, 2009 regarding SEP patients. This was at least two months before the start of the trial in this case. It is misleading to report to the Court that the Plaintiff didn't have knowledge of such documents until March 18, 2011. Again, since many of the contested documents had been made known to the Plaintiff during the discovery process, no formal supplementation was needed to identify those documents under Rule 26(e).

### (4) **Defendant Property Identified McKesson Corporation and did not identify PST because it did not did not know of its existence**

Plaintiff also complains that ACS never revealed the existence of the McKesson Corporation until February 4, 2011 and that ACS never disclosed a company named PST Services, Inc. (PST). Plaintiff contends that it learned of the existence of PST when it served a subpoena for documents on the McKesson Corporation. Plaintiff infers that ACS was trying to hide the existence of PST Services, Inc. However, ACS identified McKesson in Defendant's February 4, 2011 discovery answers. Plaintiff later had sufficient time to serve a subpoena on McKesson to obtain documents from that company. If Plaintiff wanted, she could have conducted a discovery deposition of McKesson, but she never requested any such thing. It is hard to see how Plaintiff was prejudiced about the identity of McKesson when that company was disclosed in discovery.

As for PST, the reason that ACS did not identify that company is because it never knew about PST's existence or involvement at all. All the testimony of Ms. Pavesi, Mr. Iradi, and Mr. Malmfelt shows that ACS believed that the collection payment information came to Defendant from McKesson Corporation or McKesson Provider Technologies. For example, under oath, when asked about her contact at McKesson, Ms. Pavesi stated that it was Nikki Sutton. (ACS 30(b)(6) Dep., Laura Pavesi, p. 19, ll. 17-20). When asked how many times she would contact McKesson to verify balances, Ms. Pavesi said she would contact McKesson two or three times a week. ((ACS 30(b)(6) Dep., Laura Pavesi, p. 20, ll. 11-14). Mr. Iradi testified under oath that his contact at

13

Case 1:09-cv-00515-WO-WWD   Document 115   Filed 06/02/11   Page 13 of 20

McKesson was Greg Nolan, who worked for McKesson. (ACS 30(b)(6) Dep., Stan Iradi, p. 10-11). Mr. Malmfelt testified under oath that it was McKesson who sent the collection payment reports to ACS. (ACS 30(b)(6) Dep., Chris Malmfelt, p.11, ll. 13-17). The collection reports produced to Plaintiff by ACS all have "McKesson Provider Technologies" at the top of the pages. All this testimony and document production took place during the time where discovery had been reopened for the specific purpose of learning about ACS's bona fide error defense and the payment reporting issues. It is difficult to imagine how Plaintiff could possibly complain that she was prejudiced at trial because of the Defendant's alleged non-disclosure when all this information had been previously disclosed in discovery.

In her Motion in Limine to exclude reference to McKesson and the collection payment reports, the Plaintiff inferred to the Court that Defendant was intentionally hiding the identity of PST. This was a substantial factor in the Court's striking the Defendant's bona fide error defense. As stated above, ACS did not know about PST. All documentation about SEP had a header of "McKesson Provider Technologies". In researching this issue, it appears that McKesson Provider Technologies and PST could be closely related and may even be the same entity. According to the McKesson Corporation website (www.mckesson.com), McKesson Provider Technologies is located at 5995 Windward Parkway, Alpharetta GA, 30005.[2] Coincidentally, according to the Georgia Secretary of State website on corporations, PST

---

[2] http://www.mckesson.com/en_us/McKesson.com/Contact%2BUs/Contact%2BInformation.html

Services, Inc. is located at 5995 Windward Parkway, Alpharetta GA, 30005.[3]  This would explain why a document production subpoena addressed to McKesson Corporation asking for SEP payment records sent to ACS would have a bates stamped with a title of "PSTSERVICES".  It would appear that they could be one and the same or very closely related.  In light of this new information, it is quite understandable why Defendant never mentioned PST: it only knew the company as McKesson or McKesson Provider Technologies.

In light of the above, the ACS respectfully submits that it was an error and an abuse of discretion to strike the Defendant's bona fide error defense.  There was simply no bad faith on the part of ACS when it came to identifying the company who provided ACS with the collection payment reports and data.

### B. Plaintiff's Motion In Limine, pursuant to Rule 37 of the Federal Rules of Civil Procedure was Procedurally Defective

In addition to the factual disputes described above, ACS respectfully shows the Court that there are some legal challenges to the Court's order striking the Defendant's bona fide error defense.  First, the Court allowed plaintiff's request to re-open discovery regarding ACS's bona fide error defense.  Since the Plaintiff was allowed to conduct extensive discovery, including depositions and subpoenas on third-party corporations, and since the "objectionable" information was disclosed or obtained during that re-opened discovery period, Plaintiff cannot claim prejudice at trial.

---

[3] http://corp.sos.state.ga.us/corp/soskb/Corp.asp?793546

Second, as shown above, since the "objectionable" information was actually disclosed during the re-opened discovery period, following Rule 26(e) there was no need to supplement the Defendants Rule 26 disclosures.

Further, there are questions as to whether there was authority to strike a pleading when the only item pending before the Court was a motion in limine to exclude evidence at trial. It would certainly be within the Court's discretion to allow or deny admission of certain evidence under a motion in limine. However, striking a pleading does not appear to be a remedy available under a motion in limine.

Plaintiff may contend that her motion in limine to omit certain objectionable witnesses and documents was made pursuant to Rule 37. However, there was no prior court order compelling such discovery, so it cannot be said that the ACS was being sanctioned for failing to abide by a court order on discovery. Further, because Rule 26(e) did not require an amendment of the already disclosed information, the Defendant could not have been sanctioned under Rule 37 for failure to amend its initial disclosures.

Plaintiff's purported Rule 37 motion was procedurally defective. The local rules for the Middle District of North Carolina require a party to serve a motion in such a time that allows the opposing party 21 days to serve a response and supporting brief. In this case Plaintiff served her Motion in Limine (purportedly containing a Rule 37 motion) on March 22, 2011, which was only 14 days before this matter was called for trial. Defendant was not afforded a sufficient opportunity to respond to Plaintiff's misleading representations in her motion in limine. Further, the Plaintiff never conferred with the Defendant about her motion before filing it, which is required under the local rules.

16

When viewing the circumstances in total, the Court's decision to strike Defendant's bona fide error defense was not reasonable and was an abuse of discretion and resulted in prejudice so severe that a new trial is appropriate.

III. **THE COURT'S DECISION TO GRANT PLAINTIFF'S MOTION FOR DIRECTED VERDICT WAS AN ERROR OF LAW AND RESULTED IN MANIFEST INJUSTICE**.

The FDCPA does not require a debt collector to independently investigate the merit of the debt and that a debt collector can rely on its clients' representations regarding the validity of the debt. See *Shapiro v. Haenn*, 222 F.Supp.2d 29, 44 (D.Me.2002) ("[D]ebt collectors may rely on the information their clients provide, and the FDCPA does not require them to conduct their own investigation into the amount or validity of the underlying loan.") This remains true even when the consumer has specifically challenged whether the amount alleged is due at all. *Bleich v. Revenue Maximization Grp., Inc.,* 233 F.Supp.2d 496, 500 (E.D.N.Y.2002); *Ducrest v. Alco Collections, Inc.,* 931 F.Supp. 459, 462 (M.D.La.1996). Thus, the jury should have determined if Plaintiff produced evidence that Defendant's conduct was "unfair or unconscionable means of debt collection."

The letters sent by ACS to Plaintiff providing the information required by §1692g(a) is not an unfair or unconscionable means of debt collection under § 1692f. *Turner v. J.V.D.B. & Associates, Inc.,* 330 F.3d 991 998 (C.A.7 (Ill.),2003) However, Plaintiff produced no extrinsic evidence to assist a jury in making a factual determination regarding an unsophisticated consumer's reaction to Defendant's communications; and,

Plaintiff's own reactions to Defendant's efforts to collect on the debt are irrelevant. *Durkin v. Equifax Check Services, Inc*., 406 F.3d 410 (C.A.7 (Ill.),2005)

"[W]hen considering a motion for a directed verdict, [the court] must view the evidence in the light most favorable to the non-moving party." *Townley v. Norfolk & Western Ry. Co.,* 887 F.2d 498, 499 (4th Cir.1989). In this analysis, "[t]he court ... must [also] determine whether a reasonable trier of fact could draw only one conclusion from the evidence." *Id.* Under the facts of this case, both disputed and undisputed, there was evidence on which the fact finder could reasonably find that ACS did not violate the FDCPA or applicable state law. This is particularly true where the facts, viewed in a light most favorable to ACS, show that it promptly sought reasonable cooperation for relevant information from the Plaintiff, who flatly refused a request that was neither onerous nor unreasonable. This is not a case where harassing, abusive, or contentious dialogue was present or threats of litigation occurred, and no credit reporting ever resulted. Accordingly, ACS respectfully submits that granting Plaintiff's Motion for Directed Verdict was a clear error of law and resulted in a miscarriage of justice.

## Conclusion

The FDCPA provides procedures and rules for the protection of both consumers and debt collectors. These procedures provide in part that once a consumer disputes a debt *in writing,* the debt collector must cease all debt collection attempts and verify the debt. In this case, all Plaintiff had to do to stop receiving letters and phone calls from ACS was to dispute the validity of the debt in writing within thirty days of the initial letter. Plaintiff's failure to avail herself of protection of the FDCPA prohibits her from

obtaining a FDCPA violation against ACS. As such, Defendant respectfully requests a new trial to correct a clear error of law and prevent manifest injustice.

Respectfully submitted, this the 2ND day of June, 2011.

**YATES, MCLAMB & WEYHER, LLP**

/s/ JENNIFER D. MALDONADO
North Carolina State Bar No.: 25708
e-mail: jmaldonado@ymwlaw.com
SEAN T. PARTRICK
North Carolina State Bar No.: 25176
e-mail: spartrick@ymwlaw.com
A*ttorneys for Defendants*
Post Office Box 2889
Raleigh, North Carolina 27602
Tel: 919-835-0900; Fax: 919-835-0910

KENNETH D. PERKINS

By: /s/ Kenneth D. Perkins
Kenneth D. Perkins, Esq.
PA Bar 34313
Attorney for Defendants
409 Broad Street, Suite 220
Sewickley, PA 15143
Telephone (412) 741-2101
Fax (412) 741-1199
Email: kperkins@perkinsllc.com

19

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Suzanne R. Begnoche, Esq.
Suzanne Begnoche, Attorney at Law
312 W. Franklin St.
Chapel Hill, NC 27516
Email: suzanne.begnoche@begnochelaw.com

This 2nd day of June, 2011

YATES, McLAMB & WEYHER, L.L.P.

By: /s/ Jennifer D. Maldonado
Jennifer D. Maldonado
N.C. State Bar No. 25708
Sean T. Partrick
N.C. State Bar No. 25176
One Bank of America Plaza
421 Fayetteville Street, Suite 1200
Raleigh, NC 27601
Telephone: (919) 835-0900
Fax: (919) 835-0910
E-mail: jmaldonado@ymwlaw.com
spartrick@ymwlaw.com